|, GASKINS, J. Pro Tempore.
The appellant, Walter Burnette, a state prisoner, appeals an adverse ruling on his request to transfer funds in excess of $250.00 from his savings account to his drawing account. The appellant originated this action by filing a complaint under the Department of Public.Safety and Corrections Administrative Remedy Procedure (CARP), La. R.S. 15:1171 et seq., after his request to transfer the funds was denied. The administrative relief sought by petitioner was also denied. The appellant then filed a petition for judicial review in the district court. Oral arguments were made before the presiding commissioner, Alan J. Bergeron, who submitted a report recommending that the appellant’s petition be dismissed. The district court adopted the commissioner’s recommendation and rendered judgment dismissing the petition. This appeal followed. For the following reasons, we affirm the district court ruling.

Srandard of Review

La. R.S. 15:1171 et seq., provides the statutory authority for an administrative review procedure designed to receive, hear, and dispose of “any and all complaints and grievances by adult or juvenile offenders against the state, the governor, the department or any officials or employees thereof ...” La. R.S. 15:1171(B). Judicial review of an adverse decision is available pursuant to La. R.S. 15:1177. This review includes appeals. Washington v. Louisiana State Penitentiary, 98-1310 (La.App. 1st Cir.6/25/99), 740 So.2d 761; Lay v. Porey, 97-2903, pp. 3-4 (La.App. 1st Cir.12/28/98); 727 So.2d 592, 594; see also La. R.S. 49:964.
Judicial review shall be confined to the record, as developed by the administrative proceedings. La. R.S. 15:1177(A)(5). The court may reverse or modify the agency decision if substantial rights of the appellant are prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the agency’s statutory authority; (3) made upon 1 ¡.unlawful procedure; (4) affected by error of law; (5) arbitrary, capricious, or an abuse of discretion; or (6) manifestly erroneous. La. R.S. 15:1177(A)(9); Lay v. Porey, supra.
The manifest error test is used in reviewing the facts as found by the administrative tribunal; the arbitrary and capricious test is used in reviewing the administrative tribunal’s conclusions and its exercise of discretion. Washington v. *638 Louisiana State Penitentiary, supra; Rochon v. Whitley, 96-0835, p. 5 (La.App. 1st Cir.2/14/97), 691 So.2d 189, 192.
La. C.C. art. 9 provides guidance in the interpretation of laws:
When a law is clear and unambiguous and its application does not lead to' absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. ■
In this case, at issue is the interpretation of a statute, La. R.S. 15:874(4)(c), enacted by Acts 1997, No. 528, and a subsequent regulation issued by the Department of Public Safety and Corrections implementing the statute.

Discussion

La. R.S. 15:871-874 govern matters of compensation of inmates in the custody of the Department of Public Safety and Corrections and the handling of inmate compensation accounts. In this case, the appellant, who is serving a sentence of 99 years, sought to have the funds over $250.00 in his savings account transferred to his personal drawing account. This request was denied on the grounds that such a transfer was not authorized by statute or regulation. The question is whether La. R.S. 15:874(4)(e) and corresponding departmental regulation No. B-09-003(6)(A)(3) authorize this transfer.
La. R.S. 15:874(4) provides, in relevant part:
(c) When an inmate’s sayings account attains a balance of at least two hundred fifty dollars, the inmate may deposit future compensation into either his savings account or his personal drawing account. When an inmate selects to have future compensation deposited to his personal drawing account as provided herein, and subsequently a court of competent jurisdiction orders payment of court costs in a matter to which the inmate is a party causing the inmate’s account balance to -be less than two hundred fifty dollars, thirty percent of future compensation shall be deposited to his drawing account and seventy percent shall be distributed toward payment of the court costs. [Emphasis supplied.]
| ¡¡The dispute in the instant case concerns the meaning of “future compensation” in this statute. The commissioner interpreted this provision to mean only compensation earned in the future, that is, after the statute was enacted. The appellant, on the other hand, argues that the term “future compensation” means compensation in excess of $250.00, irrespective of the date of the statute.
This provision was enacted by Act 528 of the 1997 Louisiana legislative session. Prior to the enactment of the above provision, Paragraph (2) of La. R.S. 15:874 simply provided that an inmate’s compensation record shall show a distribution to the inmate’s accounts on the basis of fifty percent (50%) for the inmate’s savings account and fifty percent (50%) for the inmate’s personal drawing account. Act 528 modified this provision by adding paragraph (4)(c) and by adding to Paragraph (2) the following proviso: “except as otherwise provided in Paragraph (4) of this Section.”
The other sub-parts of Paragraph (4) of the statute specify when deductions may be made from the savings account, with sub-part (f) qualifying that:
Except as provided in Paragraph (7) of this Section, money may not be withdrawn from an inmate’s savings account for any other reason prior to his discharge or parole, unless authorized by the secretary of the department.
Pursuant to its regulatory authority under the statute, the Secretary of the Department of Public Safety and Corrections promulgated Department Regulation No. B-09-003 (6)(A)(3), which states:
Upon approval of the Warden, inmates serving a life sentence may transfer amount [sic] in excess of $250.00 from their savings account to their drawing account. Generally, all outstanding *639 debts, (i.e. owed to the department, the courts, victims, etc. or other obligations which would otherwise be payable out of the savings account) must be satisfied prior to the transfer unless otherwise approved by the Warden.
For all other inmates, when their savings account attains a balance of $250.00, future compensation may be deposited into either the savings or drawing account. When an inmate elects to have future compensation deposited into his drawing account and is subsequently ordered to pay court costs which reduces the savings account balance to less than $250.00, 80% of future compensation shall be deposited into the drawing account and 70% shall be distributed toward payment of any remaining court costs. [Emphasis supplied.]
14At the time Act 528 was enacted and the corresponding departmental regulations were passed in 1997, the appellant had accumulated more than $250.00 in his savings account. Subsequent to the enactment of the provisions above, he requested that the funds in excess of $250.00 be transferred to his drawing account. This request was denied on grounds that the residual funds in excess of $250.00 were not “future compensation”; the authorities construed this phrase to mean compensation earned subsequent to the enactment of Act 528.
Appellees contend that the clear meaning of the phrase “future compensation,” in the context of the statute, means only compensation earned subsequent to the enactment of the statute. Accordingly, the commissioner interpreted departmental regulation B-09-003 (6)(A)(3) to mean that prisoners serving a life sentence may move all amounts in excess of $250.00 in their savings accounts to their drawing accounts, whereas prisoners such as the petitioner who are serving numbered sentences, may only transfer future compensation amounts in excess of $250.00, meaning compensation obtained after the effective date of the statute or regulation.
The statute and regulation are clear and unambiguous. La. R.S. 15:874(4)(c) and departmental regulation No. B-09-003(6)(A)(3) plainly state that after an inmate accumulates $250.00 in his savings account, any future compensation can be deposited in his drawing account. Sub-part (4)(f) of the statute prohibits withdrawals from the savings account pri- or to his discharge or parole unless provided by statute or authorized by the secretary of the department. The regulation, authorized by the secretary of the department, reiterates the language of the statute, and also provides that “lifers” can withdraw the amount in savings in excess of the $250.00 amount. The meaning of “future compensation” is clear, addressing wages paid after the enactment of these provisions.
We must investigate next whether the different treatment of “lifers” and “numbered” inmates, as relates to their withdrawal of excess savings, leads to an absurd consequence. Since lifers, unless pardoned, will be in prison their entire life, and inmates with numbered | Rsentences often serve less than the actual number of years sentenced, it is not absurd to treat these prisoners differently as it pertains to their savings accounts. The second inquiry is whether prisoners who already attained the amount of $250 .00 in their accounts prior to this enactment are treated differently than those who reached the $250.00 amount in their savings accounts after the enactments. The answer is that these prisoners are treated the same, with both categories being able to choose where future compensation, in excess of the $250.00 savings mandate, is to be deposited. That some prisoners may have more savings than others, inaccessible to them except as provided by law or regulation, is not an absurd consequence.
Just as the inmates were instrumental in effecting the amendment to La. R.S. 15:874(4)(c) to provide for the accessibility of future funds in excess of $250.00, so too *640 can they seek to change the law as it pertains to funds in excess of $250.00 in their savings account. Moreover, with the secretary of the department having the authority to allow for the withdrawal of savings, the inmates have another avenue to pursue a change in the regulation of inmate savings accounts.

Conclusion

The district court’s ruling, upholding the commissioner’s recommendations, is not in error, and consequently, is affirmed at the appellant’s cost.
AFFIRMED. -
PEATROSS, J., dissents with written reasons.